IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAIRO ENRIQUE RAGA ALEMÁN, | § § § | |
| *Petitioner*, | § § § | No. 1:26-CV-00529-DAE |
| v. | § § | |
| HOMAN, *et al.*, | § § § | |
| *Respondents*. | § § | |

## ORDER

Before the Court is Petitioner Jairo Enrique Raga Alemán's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, filed through his next friend, Beatriz Adriana Alemán Lopez, (Dkt. # 1), Petitioner's Motion for Temporary Restraining Order, (Dkt. # 2), Petitioner's Motion to Expedite, (Dkt. # 3), and Petitioner's Motion for Immediate Release, (Dkt. # 4). The Court finds this matter suitable for disposition without a hearing. After careful consideration of the parties' briefings and the relevant law, the Court **GRANTS** the Petition for Writ of Habeas Corpus, (Dkt. # 1), and **DENIES** as **MOOT** all other pending motions, (Dkts. ## 2; 3; 4), for the reasons that follow.

## FACTUAL BACKGROUND

Petitioner Raga Alemán is a citizen of Venezuela who is currently detained at the T. Don Hutto Detention Center in Taylor, Texas. (Dkt. # 1 at 3.) In

1

December 2023, Petitioner entered the United States.  (Dkt. # 1-3 at 3.)  At the time of his entry, Petitioner was apprehended by Department of Homeland Security ("DHS") officials.  (Id.)  The evidence submitted to the Court suggests that Petitioner was detained for over four months before he was released pursuant to a grant of humanitarian parole under the Immigration and Nationality Act ("INA") § 212(d)(5)(A).  (Id. at 2, 5.)

In the almost two years since his release via humanitarian parole, it appears that Petitioner has complied with all conditions of his release.  (Dkt. # 1 at 3 (Petitioner was apprehended at an Immigrations and Customs Enforcement ("ICE") reporting appointment); 1-2 at 3 (Petitioner has complied with ICE reporting requirements); see Dkt. # 9 (no allegations that Petitioner has not complied).)  Sometime after his entry, Petitioner also sought asylum.  (See Dkt. # 9-2.)  That application was denied by the immigration judge and Petitioner was ordered removed.  (Id.)  Petitioner has since appealed that decision.  (Dkts. ## 1 at 3; 9 at 4.)

On October 8, 2025, Petitioner was detained by immigration officials while voluntarily attending an ICE reporting appointment.  (Dkt. # 1 at 3.) Petitioner has remained detained continuously since that point and is being held without the opportunity for a bond hearing.  (Id. at 5.)  Petitioner alleges that his detention has caused him to suffer significant weight loss, untreated infections,

depression, anxiety, and severe emotional and psychological distress.  (Id. at 4; Dkt. # 1-2.)

PROCEDURAL HISTORY

On March 2, 2026, Petitioner submitted his habeas petition through his next friend, through his next friend, Beatriz Adriana Alemán Lopez.[1]  (Dkt. # 1.)  Petitioner also simultaneously filed a Motion for Temporary Restraining Order, (Dkt. # 2), a Motion to Expedite, (Dkt. # 3), and a Motion for Immediate Release, (Dkt. # 4).

---

[1] The Court concludes that the Next Friend, Ms. Alemán Lopez, has properly asserted standing to seek habeas relief on the Petitioner's behalf.  Here, Ms. Alemán Lopez has submitted a signed declaration wherein she asserts that during Petitioner's detention, Petitioner's mental, emotional, and physical health have deteriorated drastically.  (Dkt. # 1-2 at 2–3.)  She states that due to Petitioner's physical and mental condition paired with the limited access to legal resources within the T. Don Hutto Detention Center, Petitioner is unable to adequately protect his legal rights or access to courts on his own behalf.  (Id.)  Ms. Alemán Lopez is Petitioner's mother.  (Id. at 2.)  Respondents do not challenge Ms. Alemán Lopez's Next Friend standing.  Under the facts before it, the Court finds that Ms. Alemán Lopez can properly bring this Petition.  See Whitmore v. Arkansas, 495 U.S. 149, 163–64 (1990) ("Decisions applying the habeas corpus statute have adhered to at least two firmly rooted prerequisites for 'next friend' standing. First, a 'next friend' must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest." (citations omitted)); Santos v. Merrick, No. SA-25-CA-01765-XR, 2026 WL 300786, at *2 (W.D. Tex. Jan. 30, 2026) (finding standing met when the Next Friend was the petitioner's sister and petitioner lacked adequate access to free legal resources in the detention center).

On March 4, 2026, this Court ordered Respondents Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); the Attorney General of the United States; Secretary of the Department of Homeland Security ("DHS"); and the Warden of the T. Don Hutto Detention Center (collectively, "Respondents") to show cause within three days as to why the petition should not be granted.  (Dkt. # 6.)  Respondents Acting Director of ICE, Attorney General, and Secretary of DHS (herein, "Federal Respondents")[2] timely filed a response to the Petition on March 7, 2026.  (Dkt. # 9.)

LEGAL STANDARD

A district court may grant a writ of habeas corpus if a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.  The habeas petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence."  Villanueva v. Tate, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (internal citation and quotations omitted).  "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'"  Id. (quoting 28 U.S.C. § 2243).

---

[2] Respondent Warden of the T. Don Hutto Detention Center, has not joined the response.

DISCUSSION

In his Petition, Petitioner challenges his mandatory detention as a violation of his Fifth Amendment due process rights.  (See Dkt. # 1); Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed[.]").

As an initial matter, the Court finds that it has jurisdiction over this case for the same reasons stated in previous orders.  Campuzano v. Noem, No. 1:25-cv-1715-DAE, 2026 WL 90062 (W.D. Tex. Jan 6, 2026); Fabian-Granados v. Bondi, No. 1:25-cv-2068-DAE, 2026 WL 90061 (W.D. Tex. Jan. 8, 2026); Silva v. Bondi, No. 1:25-cv-2155-DAE, 2026 WL 90060 (W.D. Tex. Jan. 12, 2026).  The Court also finds that, to the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile."  See Lorenzo C. P., v. Noem, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025); see also Shi v. Lyons, No. 1:25-CV-274, -- F. Supp. 3d --, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025); (Dkt. # 6 at 1 (asserting that Petitioner is ineligible for bond before an immigration judge)).

5

With respect to the merits of the Petition, the Court finds that Petitioner's detention violates his right to procedural due process under the Fifth Amendment of the United States Constitution.  Because the Court concludes that Petitioner's detention is unlawful on this basis alone, it does not reach Petitioner's other bases for relief.[3]  The Court's analysis proceeds in two steps: first, the Court will discuss whether and to what extent procedural due process applies to Petitioner; and second, the Court will analyze whether Petitioner's due process rights were violated.

I.       Whether Petitioner is Entitled to Due Process Clause Protections

The Fifth Amendment's Due Process Clause prevents the Government from "depriv[ing]" any "person . . . of liberty . . . without due process of law." U.S. CONST. amend. V.  This right is not limited to United States citizens;

---

[3] To the extent Federal Respondents argue that the Fifth Circuit's recent decision in Buenrostro-Mendez v. Bondi, --- F.4th ---, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), prevents this Court's review of the Petitioner's due process claims, the Court, like other courts that have considered the question, finds such an argument unpersuasive.  See Valencia Reyes v. Noem, et al., No. SA-25-CA-01921-XR, Dkt. # 7, at *6–8 (W.D. Tex. Feb. 25, 2026) (collecting cases).  Indeed, the Fifth Circuit's decision was limited only to that petitioner's statutory interpretation arguments and did not reach any issue of whether a petitioner's detention violated the Fifth Amendment.  See Buenrostro-Mendez, 2026 WL 323330.  The Government acknowledged as much in their oral arguments by stating: "We have one issue before the Court now: the statutory question. . . . There's not, in other words, a due process claim here."  Oral Argument, Buenrostro-Mendez, 2026 WL 323330, at 44:56–45:11 (5th Cir. Feb. 3, 2026), available at https://www.ca5.uscourts.gov/OralArgRecordings/25/25-20496_2-3-2026.mp3.

noncitizens are similarly entitled to due process under the Fifth Amendment. Trump v. J. G. G., 604 U.S. 670, 673 (2025); Demore v. Kim, 538 U.S. 510, 523 (2003). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

Federal Respondents argue that, because Petitioner is entitled to no more due process than the INA gives him, he does not have a viable procedural due process claim. (See Dkt. # 9 at 3, 15–17, citing Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020)). First, the Court notes that while it is true as a matter of statutory construction that § 1225 permits mandatory detention, the question remains as to what process is due to people detained under that statute. Santiago v. Noem, No. EP-25-CV-361-KC, 2025 WL 2792588, at *7 (W.D. Tex. Oct. 2, 2025) ("In Jennings, the [Supreme Court] held the mandatory detention statutes . . . did not . . . require periodic bond hearings. . . But the Court expressly left open the constitutional due process question and remanded the case with instructions that the lower courts consider the constitutional issue in the first instance." (citing Jennings v. Rodriguez, 583 U.S. 281, 312 (2018))). It is for the courts to decide whether the constitutional protections afforded pursuant to a given statute are adequate. The mere existence of some protections under a statute does

7

not relieve the Court of its responsibility to ensure that those protections are indeed constitutionally sufficient.  See Jennings, 583 U.S. at 312; Counselman v. Hitchcock, 142 U.S. 547, 565 (1892), overruled on other grounds by Kastigar v. United States, 406 U.S. 441 (1972) ("Legislation cannot detract from the privilege afforded by the constitution."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the due process clause applies, the question remains what process is due . . . The answer to that question is not to be found in the . . . statute.").

Second, insofar as Federal Respondents rely on Thuraissigiam to argue that Petitioner's due process rights are limited to those provided by statute because he is an "applicant for admission" who has never been formally admitted to the United States, the Court is not convinced.  (See Dkt. # 9 at 3, 15–17.)  In Thuraissigiam, the Supreme Court rejected a noncitizen's due process claim, explaining that people detained at or near the border are treated as "applicants for admission" and are afforded "only those rights regarding admission that Congress has provided by statute."  591 U.S. at 140.  However, as noted by other courts, while Thuraissigiam limited the scope of due process claims available to "applicants for admission," its statements and holdings must be read in context. See Lopez-Arevelo v. Ripa, 801 F. Supp. 3d 668, 682 (W.D. Tex. 2025) (discussing Thuraissigiam).  And when reading Thuraissigiam in context, the Court does not

8

understand the decision to confine Petitioner's due process rights to only those set forth in the INA. See id. at 681–84.

Several courts in this Circuit have distinguished Thuraissigiam from cases like Petitioner's for reasons this Court finds persuasive. For example, in Lopez-Arevelo, the court rejected the respondents' attempts to rely on Thuraissigiam because: (1) Thuraissigiam addressed challenges to deportability rather than challenges to the fact or length of detention; and (2) the petitioner in Thuraissigiam did not have a significant presence in the United States. 801 F. Supp. 3d at 681–85. Therefore, the Lopez-Arevelo court concluded, the petitioner could pursue his due process claim because the petitioner "challenge[d] his detention, not his deportability" and "because he was detained after years of presence in the United States, rather than on the threshold of initial entry." Id. at 685. The same reasoning applies here. See also Trump v. J. G. G., 604 U.S. 670, 673 (2025) (reaffirming that the Fifth Amendment entitles noncitizens to due process of law).[4]

_____

[4] The fact that Petitioner was detained upon entry and then released via a grant of humanitarian parole does not change the Court's conclusion. In this case, Petitioner paroled into the country with instructions to report to ICE periodically. (Dkt. # 1-3 at 2.) In the almost two years since, Petitioner has lived continuously in the United States. He has adhered to all his conditions of release, and he has obtained work authorization. This situation is a far cry from that of Thuraissigiam, even if Thuraissigiam were applicable to the case at hand. See Lopez-Arevelo, 801 F. Supp. 3d at 681–85 (finding Thuraissigiam inapplicable where the petitioner was paroled into the country via an order of recognizance); Santiago, 2025 WL

9

Federal Respondents also argue that Petitioner's procedural due process challenge to his detention is really a substantive due process challenge. (Dkt. # 9 at 2–3, 11–15.)  The Court does not agree.  Here, Petitioner is challenging the process that is due to him before he can be deprived of a protected interest—his liberty.  (Dkt. # 1 at 5.)  That is squarely a procedural due process claim.  See Mathews v. Eldridge, 424 U.S. 319, 332–33 (1976).

The Court does not find persuasive the cases Federal Respondents discuss in support of their argument.  Federal Respondents first cite Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1 (2003) for the proposition that Petitioner cannot establish a procedural due process claim because his request for a bond hearing is immaterial to 8 U.S.C. § 1225(b), which mandates detention regardless of flight risk or danger to the community.  (Dkt. # 9 at 13–15.)  However, Doe arose in an entirely different context: a challenge to a sex offender registration statute.  See Doe, 538 U.S. at 4.  The Court therefore finds Doe inapposite.  See Kevin Armando Gomez Hernandez, Petitioner, v. ICE et al., No. EP-26-CV-67-KC, 2026 WL 503958, at *2 (W.D. Tex. Feb. 23, 2026) (finding Doe inapplicable to the

---

2792588, at *7–10 (finding Thuraissigiam inapplicable where the petitioner was living in the United States under a grant of DACA); Vieira v. De Anda-Ybarra, 806 F. Supp. 3d 690, 698–700 (W.D. Tex. 2025); Hernandez-Fernandez v. Lyons, No. 5:25-cv-773-JKP, 2025 WL 2976923, at *8 (W.D. Tex. Oct. 21, 2025); Zafra v. Noem, No. EP-25-cv-521-DB, 2025 WL 3239526, at *3 (W.D. Tex. Nov. 20, 2025).

immigration detention context); Chan v. Bondi, No. 3:25-CV-298, 2026 WL 388605, at *2 (W.D. Pa. Feb. 12, 2026) (same).  Moreover, the Supreme Court has repeatedly affirmed that "[w]hen protected interests are implicated, the right to some kind of prior hearing is paramount." Bd. of Regents v. Roth, 408 U.S. 564, 569–70 (1972); accord Smith v. Org. of Foster Families for Equal. & Reform, 431 U.S. 816, 848 (1977); Mitchell v. W.T. Grant Co., 416 U.S. 600, 624 (1974); Lopez-Arevelo, 801 F. Supp. at 685 ("The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time.").  Second, Federal Respondents cite an unpublished Fifth Circuit opinion, Wekesa v. U.S. Attorney, No. 22-10260, 2022 WL 17175818 (5th Cir. Nov. 22, 2022), in which a Fifth Circuit panel upheld the denial of a habeas petition that brought a due process challenge to prolonged mandatory detention.  Like the Lopez-Arevelo court, however, this Court does not find Wekesa persuasive.  Although the Wekesa court rejected the petitioner's due process challenge, it provided little to no reasoning for that decision.  See Wekesa, 2022 WL 17175818, at *1.  Furthermore, in reaching its conclusion, the Wekesa opinion relied only on Jennings, a decision which expressly left open the constitutional question.  See id.; Jennings, 583 U.S. at 312; see also Lopez-Arevelo, 801 F. Supp. at 683–84.  Accordingly, the Court does not find Wekesa's analysis compelling and declines to apply it here.

11

Therefore, for the reasons described above and following the sound rationale of other courts in this district, the Court concludes that Petitioner is able to bring a procedural due process claim.  See Lopez-Arevelo, 801 F. Supp. 3d at 681–85 (determining that Petitioner can bring a procedural due process claim); Santiago, 2025 WL 2792588, at *7–10 (same); Vieira v. De Anda-Ybarra, 806 F. Supp. 3d 690, 697–700 (W.D. Tex. 2025) (same); Hernandez-Fernandez v. Lyons, No. 5:25-cv-773-JKP, 2025 WL 2976923, at *7–8 (W.D. Tex. Oct. 21, 2025) (same); Zafra v. Noem, No. EP-25-cv-521-DB, 2025 WL 3239526, at *2–3 (W.D. Tex. Nov. 20, 2025) (same); Valencia Reyes, No. SA-25-CA-01921-XR, Dkt. # 7, at *4–22 (same); Longoria Mendoza v. Noem, et al., No. 5:26-CV-0728-JKP, Dkt. # 9, at *6–10 (W.D. Tex. Feb. 26, 2026) (same).

II.      Whether Petitioner's Due Process Rights Have Been Violated

Having found that Petitioner is entitled to due process protection under the Fifth Amendment, the Court turns to whether Petitioner's arguments are meritorious.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).  "To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in Mathews[.]"  Martinez v. Noem, No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025).  Those factors are: (1) "the

12

private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first factor weighs heavily in Petitioner's favor. "'The interest in being free from physical detention' is 'the most elemental of liberty interests.'" Martinez v. Noem, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025) (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)). In this case, Petitioner was released from custody almost two years ago. He was detained while attending an ICE appointment and has been in custody for over five months without the possibility of release on bond. "The Supreme Court has repeatedly affirmed that '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" Hernandez-Lara v. Lyons, 10 F.4th 19, 27 (1st Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 755 (1987)). This interest "deserves great weight and gravity" and thus weighs heavily in Petitioner's favor. See Vieira, 806 F.Supp.3d at 701; see also Lopez-Arevelo, 801 F. Supp. 3d at 685–86 (collecting cases that have recognized that once released from

13

immigration custody, noncitizens acquire a "a protectable liberty interest in remaining out of custody on bond").

On the second factor, courts consider "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." Martinez v. Noem, 2025 WL 2598379, at *3 (quoting Gunaydin v. Trump, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025)). Here, there is a high risk of erroneous deprivation of Petitioner's liberty since he is being detained without the opportunity for an individualized bond hearing, depriving him of the ability to contest the reasonableness of his detention. See Vieira, 806 F.Supp.3d at 701 ("The risk lies in the automatic continued deprivation of liberty . . ."). There would be significant value added by additional safeguards, such as a bond hearing or pre-detention notice, that would reduce the likelihood of an erroneous loss of liberty. This is particularly true for Petitioner, who has received no individualized explanation as to the decision to re-detain him after years of living free of detention. (See Dkt. # 1.) "[A]bsent some change in [Petitioner's] personal circumstances, the decision to incarcerate [him] after [] years at liberty gives rise to an elevated concern that [he] has been detained without a valid reason." Santiago v. Noem, EP-25-cv-361-KC, 2025 WL 2792588, at *12 (W.D. Tex. Oct. 2, 2025); see also Valencia Reyes,

14

No. SA-25-CA-01921-XR, Dkt. # 7, at *24. Thus, this factor also weighs in Petitioner's favor.

The third factor is the Government's interest. See Mathews, 424 U.S. at 335. The Government has a legitimate interest "in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community." Lopez-Arevelo, 801 F.Supp.3d at 686–87. But where Respondents have already made the decision to release Petitioner years ago, that decision "in and of itself[] 'reflects a determination . . . that the noncitizen is not a danger to the community or a flight risk.'" Id. (citing Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd 905 F.3d 1137 (9th Cir. 2018)). Federal Respondents do not assert that any considerations have changed since that determination was made. (See Dkts. ## 9; 1 at 5 (Petitioner has a record of compliance with his reporting requirements and has no serious criminal history).) Moreover, such an interest could be adequately protected through individualized bond hearings—process that Federal Respondents find unnecessary. As another court in this District stated: "Respondents make no meaningful representation that the burden of providing this additional increment of process is beyond their ability. Instead, they only maintain that due process does not require it." Valencia Reyes, No. SA-25-CA-01921-XR, Dkt. # 7, at *25. Thus, as applied to this Petitioner, this factor is neutral.

15

In weighing all three factors, the Court finds the scale tips in Petitioner's favor; thus, Petitioner's detention without an opportunity to challenge his detention through an individualized assessment violates his right to procedural due process under the Fifth Amendment of the United States Constitution.

III.     Appropriate Relief

On the issue of appropriate relief, the Court is persuaded that it need not depart from the "typical remedy" in habeas cases challenging the lawfulness of detention, which "is, of course, release." See Munaf v. Geren, 553 U.S. 674, 693 (2008). Further, ordering a bond hearing under these circumstances would require the Immigration Judge to do that which he believes he lacks authority to do following Matter of Yajure Hurtado, 29 I&N Dec. 216, 220 (BIA 2025). The Court instead finds that the more appropriate remedy here is release. See Azua-Zuniga v. Bondi et al., No. 1:26-cv-287-RP (W.D. Tex. Feb. 20, 2026) (finding support for the same remedy under similar circumstances); Valencia Reyes, No. SA-25-CA-01921-XR, Dkt. # 7, at 25 (same); Longoria Mendoza, No. 5:26-CV-0728-JKP, Dkt. # 9, at *17–18 (same).

Indeed, the Court notes its agreement that bond hearings are "no substitute for the requirement that ICE engage in a 'deliberative process prior to, or contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." Cruz-Reyes v. Bondi, No. 5:26-cv-60,

16

2026 WL 332315, at \*6 (S.D. Tex. Feb. 3, 2026) (quoting Gonzalez v. Joyce, No. 25 Civ. 8250, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025)). "The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." Gonzalez, 2025 WL 2961626, at \*5.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus. (Dkt. # 1.) Because the Court grants the Petition and orders Petitioner's release, Petitioner's Motion for Temporary Restraining Order, (Dkt. # 2), Petitioner's Motion to Expedite, (Dkt. # 3), and Petitioner's Motion for Immediate Release, (Dkt. # 4) are **DENIED AS MOOT**. It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Jairo Enrique Raga Alemán from custody, under conditions of release no more restrictive than those in place prior to the detention at issue in this case, to a public place by **no later than 5:00 p.m. on March 18, 2026**.

2. Respondents must **NOTIFY** Petitioner's Next Friend **by email AND phone** (beatrizadrianaalemanlopez7@gmail.com; (210) 844-3018) of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before his release**.

3. Respondents are enjoined from further detaining Petitioner without first conducting a bond hearing, scheduled with notice to Petitioner's attorneys

17

and set at a date agreed upon by both parties.  At such a hearing,
Respondents bear the burden of justifying, by clear and convincing evidence
of dangerousness or flight risk, Petitioner's detention.

4.  The parties shall **FILE** individual status reports no later than **6:00 p.m.
March 17, 2026**, detailing their compliance with this Order.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, March 16, 2026.

David Alan Ezra
Senior United States District Judge